MANUFACTURERS CASUALTY INS. CO.
v. ROACH et al.
No. 2563.

District Court, D. Maryland.
Jan. 4, 1939.

Walter L. Clark, Roszel C. Thomsen, and Paul G. Ballard, all of Baltimore, Md., for plaintiff.

William D. Macmillan and L. Wethered Barroll, both of Baltimore, Md., for defendant Jones.

Semmes, Bowen & Semmes, of Baltimore, Md., for defendant Roach.

CHESNUT, District Judge.

This case has involved several points of practice under the new federal civil procedure. The plaintiff is an automobile liability insurance company, and the defendant is the holder of one of its policies, who had a driving accident on July 22, 1938 as a result of which he has been sued by a guest in his car. The fact of the accident was promptly reported and the case investigated by the insurer, but, after some negotiations and conferences between the parties, the insured filed its suit in this court to obtain a declaratory judgment that it was not liable on the policy to the defendant, and was under no obligation to defend the damage suit against him.

Although the suit was filed on the equity docket before the new rules of civil procedure became effective on September 16, 1938, the defenses of the insurer were essentially legal in nature, and on the defendant's request therefor, I ruled that he was entitled to a jury trial. As a result of the trial of the case I instructed the jury as a matter of law that there was a breach of the policy conditions which avoided the policy at the option of the insurer, unless the breach of the policy had been waived by the insurer after knowledge thereof. Instead of submitting the question of whole liability to the jury to be answered by a general verdict, I submitted to them two interrogatories to be answered which read as follows:

"The jury are requested in accordance with this instruction, and as further instructed and explained in the oral charge, to answer the following questions:

"Q. Do you or not find as a matter of fact that the Insurance Company waived the breach of the policy? (Answer this in writing 'Yes' or 'No').

"Q. If your answer to the above question is 'Yes' then answer the following ques-

tion. When (that is on what date) do you find that the Insurance Company through its agents knew of the breach of the policy?"

The jury after deliberation of nearly three hours answered the first question "Yes" and the second question "July 25th".

These interrogatories were submitted to the jury in accordance with the new rules of federal civil procedure, rule 49, paragraph (a) of which reads as follows:

"Rule 49. Special verdicts and interrogatories.

"(a) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." 28 U. S.C.A. following section 723c.

At the trial the plaintiff's counsel moved for a directed verdict to the effect that the jury should be instructed as a matter of law to answer "No" to the interrogatory as to whether the plaintiff insurer had waived the breach of the policy. After the jury had answered the interrogatories submitted to them the plaintiff has now filed a motion for a judgment non obstante veredicto, and, in the alternative, a motion for a new trial in accordance with rule 50(b), 28 U.S.C.A. following section 723, which reads:

"Rule 50. Motion for a directed verdict.
* * *

"(b) *Reservation of Decision on Motion.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

After hearing argument, and further consideration of these motions in the light of the oral instruction or charge given the jury, I have concluded that both motions should be overruled.

The motion for a judgment non obstante veredicto is based on the same contention quite fully argued and considered at the trial. The point made is that there was no substantial evidence from which the jury could properly find that the breach of the policy conditions had been waived. I took the view then, and now adhere to it, that the question must be determined, since the recent decisions of the Supreme Court in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, by the Maryland decisions and not by federal decisions as to waiver in insurance law. Waiver is, of course, the voluntary and intentional relinquishment of a *known* right. And the waiver may be either express or implied. It may be shortly said that by most federal decisions implied waiver must involve some features of estoppel to be effective against the insurer; but the Maryland decisions are definitely to the contrary. Rokes v. Amazon Ins. Co., 51 Md. 512, 34 Am.Rep. 323; Federal Mut. F. I. Co. v. Julien, 144 Md. 380, 125 A. 229; Continen-

tal Ins. Co. v. Burns, 144 Md. 429, 125 A. 232; Citizens' Ins. Co. v. Conowingo Co., 113 Md. 430, 77 A. 378; Id., 116 Md. 422, 438, 82 A. 372; Royal Ins. Co. v. Drury, 150 Md. 211, 230, 233, 132 A. 635, 45 A.L. R. 582. Columbia Casualty Co. v. Ingram, 154 Md. 360, 140 A. 601, is particularly in point as applied to this case.

■ Without extending this opinion by reciting the testimony in detail it is sufficient to summarize it by saying that after the report of the accident the insurer by its Adjusters took up its investigation, interviewed or attempted to interview a number of witnesses, offered tentatively at least to pay the property damage to the insured's automobile and did not undertake to disclaim liability until on or about September 10, six or seven weeks after the accident. After re-reading the Maryland cases I have felt obliged to conclude that there was evidence legally sufficient to submit to the jury the question whether by this course of conduct the insurer had waived the breach.

The insurer's contention to the contrary was placed on the ground that it did not definitely learn of the breach of the policy until two or three weeks before filing the proceeding in this case. The conditions which were undoubtedly breached consisted of declarations in the policy in the nature of present and promissory warranties with respect to (1) the address of the insured; (2) the place where the automobile would be principally garaged and (3) where it would be principally used. The insured had (possibly inadvertently) given his address as Timonium, Baltimore County, Maryland, and the statements in the policy were to the effect that the automobile would be principally garaged and used there; but as a matter of fact the insured, while previous to the issuance of the policy having lived at Timonium, had moved his residence from there to 611 Park Avenue, Baltimore City. By giving a county address instead of a city address he secured a substantially lower rate of premium. On the same day that the insured reported the accident he had an interview with the Company's Adjuster and made statements to the Adjuster from which the Company might very reasonably have understood, at least according to the defendant's testimony, that he was and had been living on Park Avenue rather than at Timonium; and on July 25th the Assistant Adjuster interviewed the insured at his Park Avenue address under circumstances from which

the jury could very reasonably have found, as it doubtless did find, that the Adjuster learned the insured was then permanently residing at 611 Park Avenue instead of at Timonium. While the automobile liability policy is apparently in what is now said to be a standard form, the arrangement and relation of the several declarations in the policy as to address and place of garaging and use of the automobile is such that the jury could reasonably have found under the testimony in this case that an experienced Adjuster should have known or inferred on learning of the change of permanent address, or at least was put on notice, that the insured's automobile was garaged and used principally where he resided rather than at Timonium.

There was testimony to the effect that the place of actual user of the automobile is in practice not insisted upon by the insurer under this form of policy, and that if the insured in fact resided at the address given in the policy, in the near suburbs of Baltimore City, the actual use of the automobile principally in Baltimore City would not be regarded as a breach of the policy. The insurer's contention was that while it may have had knowledge of the breach as to the address, it did not learn of the breach with respect to the place of principal garaging and use of the automobile until about August 15th. The jury were instructed that if they found the facts in accordance with this contention they should answer the question as to waiver "no". It is evident from the answers to both interrogatories that the jury did not find the facts in accordance with the plaintiff's contention.

■ The alternative motion for a new trial is based on the ground that the answers of the jury were contrary to the weight of the evidence; but it was more particularly stressed in argument that the court should have submitted to the jury a third interrogatory requiring them to find specifically when the insurer's agent first learned that the insured's automobile was not principally garaged at Timonium. An interrogatory to that effect was requested by plaintiff's counsel at the trial but was refused, together with certain requested instructions by both parties, for the reason that the jury had been fully orally instructed, and the points covered in the charge. When it was offered, at the end of the oral charge and in the presence of the jury before they had retired to consider their verdict, the follow-

ing occurred as reported by the stenographer: "Mr. Clark: And there was one motion for a separate interrogatory. The Court: I think I have explained that to the jury, Mr. Clark. Mr. Clark: I think you have explained it. The Court: I think that is really covered by everything I have said. Your suggested interrogatory is that, 'The court is requested to submit the following issue of fact to the jury: on what date do you find that The Manufacturers Casualty Insurance Company first discovered that Mr. Roach had had his automobile principally garaged in Baltimore City and not at Timonium, between September 23, 1937 and July 22, 1938?' I think I have covered that in the instructions to the jury in the question that I asked, because I pointed out the knowledge on which a waiver could be predicated must be knowledge not only as to the address— Mr. Clark: Yes. The Court—but as to the place of garaging and use."

And previously in the charge the attention of the jury was called to the three aspects of the breach of the policy that is, (1) with regard to the address, (2) principal place of garaging and (3) principal place of user, and the jury were instructed: "If the Insurance Company only learned of a change in address, but did not at the same time learn, or ought to have inferred from what they learned, that the automobile was really kept in Baltimore City rather than Baltimore County, then they did not have that full knowledge of the facts on which you could predicate a waiver by them of a breach of the policy. And I think the testimony was that the place of keeping the automobile while, perhaps, not itself very vital to the company, yet, is an apparent indication on which the company goes in fixing the rates." After reviewing the charge as a whole I am satisfied that the jury could not have failed to understand that they were not justified in answering "yes" to the interrogatory as to waiver if they found the insurer's agents did not know or should not have inferred knowledge of the breach of the policy as to the place of garaging the automobile until on or about August 15th. And indeed this point was very clearly put before the jury in argument by counsel.

It is also contended in support of the motion for a new trial that the finding of waiver by the jury was really against the weight of the evidence, with respect to the time of the acquisition of knowledge of the breach by the insurer's agents. However, the plaintiff's contentions, and the testimony on which it was based in this respect, was fully reviewed in the charge to the jury, and, while, if I had been deciding the fact, I might have reached a contrary conclusion, I do not feel that I can say the answer made by the jury after due deliberation was so clearly wrong that I would be justified in substituting my own view of the testimony for that of the jury. While the breach of the policy in this case was clear as a matter of law, the nature of the particular declarations under the facts and circumstances of the case was such that it is not particularly surprising that a jury may have taken a liberal view of the testimony as to waiver in favor of the defendant. At all events I do not feel that the answers made by the jury to the interrogatories were so clearly wrong that I am justified in granting a new trial.

For these reasons the motions for judgment *non obstante veredicto* and, in the alternative, for a new trial, are hereby overruled.